UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CRANE,<br><br>             Plaintiff,<br><br>      v.<br><br>CHEVRON U.S.A. INC., et al.,<br><br>             Defendants. | No.  1:19-cv-000805-DAD-JLT<br><br><br>ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS IN PART<br><br>(Doc. No. 20) |

This matter is before the court on defendant Chevron U.S.A., Inc.'s ("Chevron")[1] motion to dismiss plaintiff's second amended complaint ("SAC").  (Doc. No. 20.)  A hearing on the motion was held on September 4, 2019.  Attorney Randall Rumph appeared telephonically on behalf of plaintiff, and attorney Morgan Podruski appeared telephonically on behalf of defendant.

---

[1]  Defendant Chevron asserts that it has "erroneously [been] sued as Chevron North America Exploration and Production Company, a division of Chevron U.S.A. Inc. and subsidiary of Chevron Corporation."  (Doc. No. 20 at 11.)  It appears that when this action was removed to this court, defendant Chevron was not a named, but rather that Chevron North America Exploration and Production Company was the named defendant.  Both defendants, however, are named by plaintiff in his SAC.  (*See* Doc. No. 18.)  Should plaintiff elect to file a third amended complaint, he is directed to clarify whether he intends to sue both entities, or defendant Chevron only.  Moreover, the caption of the SAC names three individual defendants, but these defendants are not otherwise referenced in the SAC, nor is any claim alleged against them therein.  (*See id.*)  At the September 4, 2019 hearing on the pending motion, plaintiff's counsel explained that naming the individual defendants "was a mistake."  Accordingly, the court will terminate the three individually named defendants from this action.

The court has considered the parties' briefs and oral arguments and, for the reasons set forth below, will grant defendant's motion to dismiss in part.

## BACKGROUND

On March 11, 2019, plaintiff filed a *pro se* complaint in Kern County Superior Court against Chevron and other defendants. (Doc. No. 1 at 2.) On May 6, 2019, plaintiff filed a *pro se* first amended complaint ("FAC"). (Doc. No. 1 at 2.) On June 7, 2019, Chevron removed the action to this federal court based on federal question jurisdiction. (Doc. No. 1.) On June 14, 2019, Chevron moved to dismiss the FAC. (Doc. No. 9.) On June 17, 2019, attorney Rumph entered his appearance as attorney of record for plaintiff. (Doc. No. 11.)

In opposing Chevron's motion to dismiss the FAC, plaintiff's counsel sought leave to file a second amended complaint to cure the deficiencies identified in Chevron's motion, arguing that plaintiff had omitted key facts in the original complaint and the FAC as a consequence of being unrepresented. (Doc. No. 14.) The magistrate judge to whom the undersigned referred the motion to dismiss the FAC directed the parties to "file either a stipulation allowing the plaintiff to file an amended complaint or a joint statement that the parties do not agree to proceed by way of stipulation." (Doc. No. 15.) The parties stipulated to plaintiff's filing of a SAC and the court so ordered. (Doc. Nos. 16, 17.) On July 15, 2019, plaintiff filed his SAC. (Doc. No. 18 ("SAC").)

In his SAC, plaintiff alleges as follows. Plaintiff is sixty-one years old and worked for Chevron at its gas plant in McKittrick, California for approximately thirty-five years. (SAC at ¶¶ 5, 6.) At the time of his termination, plaintiff was employed as a Head Operator by Chevron, which required him to monitor gas flows, strip fluids from the gas, and respond to alarms. (*Id.*) Plaintiff "received numerous awards from his peers and supervisors," "has been recognized for his successful execution of [drills]" and "his leadership training," and "always received excellent written work evaluations and was well-liked by his superiors and peers." (*Id.* at ¶¶ 7, 8.)

On or about November 3, 2017, Chevron sent its employees an expression of interest form ("EOI") to sign if they were interested in terminating their employment with Chevron as part of an upcoming reduction in work force in exchange for severance pay. (*Id.* at ¶ 11.) The deadline for submitting an EOI was November 22, 2017. (*Id.*) On or about November 22, 2017, plaintiff

submitted a signed EOI containing additional language as a counter-offer. (*Id.* at ¶ 13.) Chevron did not accept the EOI/counter-offer submitted by plaintiff. (*Id.* at ¶ 14.)

At or around this same time, plaintiff was harassed on the basis of his age by younger co-workers, who "demand[ed] that plaintiff take the package[,] so it would leave a vacancy for one of them to fill." (*Id.* at ¶ 15; *see also id.* at ¶¶ 16, 17, 18.) On November 26 and 27, 2017, plaintiff received nine phone calls, emails, and text messages "from supervisors and the individual who would succeed to [his] position," asking him to submit a second EOI, despite the November 22, 2017 deadline to submit an EOI having already passed. (*Id.* at ¶ 19.) On or about November 27, 2017, plaintiff signed and submitted a second EOI form. (*Id.* at ¶ 21.) Plaintiff "felt harassed and coerced into signing a new EOI form and thought he would be terminated if he did not sign it." (*Id.*) Plaintiff "felt pressure and stress on the job" due to "younger employees demanding that he submit an EOI so they could have [his] job." (*Id.* at ¶ 27.)

Plaintiff "was informed by fellow employees that all employees were given seven (7) days to revoke any EOI . . .." (*Id.* at ¶ 20.) On or about November 30, 2017, members of Chevron's human resources transition team informed employees who signed an EOI that they were entitled to revoke their EOI within seven days after its submission if they chose to do so. (*Id.* at ¶ 21.) On or about December 1, 2017, plaintiff submitted a written letter of revocation of his second EOI. (*Id.* at ¶ 22.)

On or about December 16, 2017, plaintiff requested leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, to support his wife, who was suffering from cancer and was scheduled to undergo an urgent mastectomy. (*Id.* at ¶ 24.) Plaintiff believes that he was entitled to family medical leave, but Chevron denied his request. (*Id.*) Plaintiff received only one day off without pay to aid his wife despite needing more time. (*Id.*)

Although an exact time period is not identified in the SAC, plaintiff alleges that Chevron scheduled him for "dangerous work" by assigning him to work alone at the gas plant, in violation of the Head Operator Manual and established safe practices. (*Id.* at ¶ 25.) Plaintiff alleges that these changes in his work schedule constitute discrimination because younger operators "always

/////

3

had assistants." (*Id.*)  Plaintiff complained about his schedule to his supervisors and human resources in November and December 2017 and January 2018 to no avail.  (*Id.* at ¶ 26.)

On or about January 9, 2018, "a dangerous emissions event occurred at the gas plant" involving emission of propane, butane, glycol, benzene, and a corrosion inhibitor.  (*Id.* at ¶ 28.) Plaintiff documented the event in a report and "submitted the report to his supervisors and to the required environmental agencies on January 24, 2018."  (*Id.*)  Plaintiff also called a hotline Chevron set up for employees to report violations of the law or company policy and informed them of the incident.  (*Id.*)  Plaintiff alleges that his supervisors "did not want the [] Incident to be reported" and that it was "being covered up."  (*Id.* at ¶ 29.)  His co-workers showed him a video of the incident but did not allow him access to the video when he sought to use it to report on the incident.  (*Id.*)  When other operators met on January 10, 2018 to discuss the incident, plaintiff was excluded from that meeting.  (*Id.* at ¶ 30.)

On January 18, 2018, plaintiff's doctor diagnosed him as suffering from an anxiety and/or stress disorder and told him that he needed to take medical leave on that basis.  (*Id.* at ¶ 32.) Chevron approved plaintiff's short-term disability.  (*Id.*)  Plaintiff alleges that, "[b]y recognizing Plaintiff's entitlement to [short term disability] leave, [Chevron] clearly gave Plaintiff the impression [that] his EOI revocation had been accepted" because Chevron had a policy that, if an employee is taking time off pursuant to an approved leave of absence and receiving short term disability benefits prior to severance, those benefits would end when the employment relationship terminates.  (*Id.*)  Plaintiff was required to notify Chevron's health and medical staff of his medical leave since it would last more than five consecutive days.  (*Id.* at ¶ 33.)  On January 23, 2018, plaintiff contacted Chevron's disability management partner, Reed Group, to report his absence and begin a certification process.  (*Id.*)  On or about February 22, 2018, much to plaintiff's surprise, Reed Group informed him that Chevron had terminated his employment on January 30, 2018.  (*Id.*)

After his termination, plaintiff applied for a job with Chevron as an operator in February 2019.  (*Id.* at ¶ 100.)  Plaintiff alleges that he was "imminently qualified" for that position, but Chevron denied him the job, indicating that another individual was more qualified.  (*Id.*)

In his SAC plaintiff asserts twelve causes of action: an FMLA claim and a California Family Rights Act ("CFRA") claim, California Government Code § 12945.2, alleging that plaintiff's request for family medical leave was a "negative factor in the decision to terminate [his] employment"; a claim brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, alleging that plaintiff's age was a determining factor in the decision to terminate him; four claims brought pursuant to the Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, alleging that plaintiff's age and/or disability and/or filing of claims and lawsuits were factors in the decisions to terminate him and/or to not re-hire him; a FEHA claim alleging failure to prevent discrimination; a breach of contract claim; two claims alleging that plaintiff was terminated for expressing safety concerns and reporting the Emissions Incident, in violation of public policy and California Labor Code §§ 232.5, 1102.5 and 6310; and a claim for wrongful termination in violation of public policy.[2] (*Id.* at 7–19.) Plaintiff seeks compensatory, liquidated, and punitive damages, as well as an award for attorney's fees and costs. (*Id.* at 19.)

On July 29, 2019, Chevron moved to dismiss the SAC, arguing that it failed to state a claim upon which relief can be granted. (Doc. No. 20.) On August 21, 2019, plaintiff filed his opposition to the motion to dismiss, and on August 27, 2019, Chevron filed its reply thereto. (Doc. Nos. 23, 24.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[2] Plaintiff's SAC is difficult to decipher, in part because plaintiff has not used clear headings and does not cite to the statutes he is basing his claims upon. Should plaintiff elect to file an amended complaint, he is instructed to clearly label his causes of action and include citations to the specific statutes that he is asserting each claim under.

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

Chevron first contends that new claims included in the SAC that were not part of the FAC should not be considered because they exceed the scope of the leave to amend which the court granted. (Doc. No. 20 at 14.) Second, Chevron argues that "Plaintiff's layoff on January 30, 2018[] was the result of his submission of two EOI forms indicating his interest in separating from his employment." (*Id.* at 12.) Third, Chevron argues that each of plaintiff's causes of action fails to state cognizable claims. Finally, Chevron moves to strike plaintiff's prayer for punitive damages. Below, the court will first address Chevron's request for judicial notice and then address each of its arguments.

/////

/////

6

**A.      Chevron's Request for Judicial Notice**

Chevron requests that this court take judicial notice of the two EOIs that plaintiff references in his complaint.  (Doc. Nos. 20-2–20-4.)  However, Chevron presents no argument that the EOIs meet the Federal Rule of Evidence 201(b) standard.  *See* Fed. R. Evid. 201(b) (a court may "judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  Accordingly, the court will not take judicial notice of the EOIs.  Nevertheless, because (1) plaintiff in his SAC explicitly refers to the two EOIs, (2) Chevron has attached both EOIs to the pending motion to dismiss, and (3) plaintiff does not contest their authenticity, the court may and will consider them pursuant to the incorporation by reference doctrine.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[T]he 'incorporation by reference' doctrine [extends] to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").

**B.      Whether Additional Claims Were Properly Included in the SAC**

Chevron contends that it "did not consent" to plaintiff adding causes of action in his SAC that were not asserted in the FAC.  (Doc. No. 20 at 14.)  Specifically, Chevron takes issue with plaintiff's new claims asserting breach of contract, failure to prevent discrimination claim, and the discrimination or violations of the law based on Chevron's decision not to rehire plaintiff for the operator position that he applied for after being terminated.  (*Id.*)  Chevron argues that inclusion of these claims in the SAC "exceed[s] the scope of the permitted leave to amend," and argues that these changes should be interpreted as proposed amendments and the court should determine whether leave to amend should be granted.  (*Id.* at 14, 27–28.)

First, Chevron provides no authority in support of its position in this regard.  Second, as reflected by the parties' stipulation, the scope of the permitted leave to amend appears to be quite broad in that the parties agreed that "Plaintiff may file a second amended complaint in this

matter." (Doc. No. 16 at 1.) The parties' stipulation contained no restrictions as to the scope of the permitted amendments. Third, the court's order giving effect to the parties' stipulation is similarly broad. (*See* Doc. No. 17 at 1.) Chevron's reliance on the decision in *In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908 (N.D. Ohio 2009), is unavailing because the court there "concluded that the changes made by Plaintiff's amended complaint exceeded the scope of leave granted." *Id.* at 913. That is simply not the case here because the scope of the amendment being permitted was not limited in any way.

Accordingly, the court concludes that plaintiff's new causes of action alleged in the SAC do not exceed the scope of the leave to amend granted by the court.[3]

## C.     Whether Plaintiff's Termination was the Result of Submitting an EOI

In moving to dismiss plaintiff's ADEA, FEHA, and wrongful termination in violation of public policy, Chevron argues that plaintiff's termination was the result of his "expression of interest in departing from his employment." (Doc. No. 20 at 16, 19–24, 26–27, 32–33.) Specifically, Chevron argues that plaintiff voluntarily "signed and submitted two EOI forms to Chevron . . . indicating his interest in separating from his employment with Chevron" pursuant to terms agreed upon by Chevron and its employees' union. (*Id.* at 20.) Chevron therefore contends that the "more likely and non-discriminatory explanation for" plaintiff's termination is that he submitted a valid EOI form wherein he indicated that he wished to depart from his employment. (*Id.* at 24, 25.) Chevron's argument in this regard is not persuasive.

First, plaintiff alleges—and Chevron appears to agree—that "Plaintiff submitted the [first] EOI document . . . with additional language as a counter-offer," and that "Defendant did not accept the counteroffer . . ., indicating [it] . . . had been rejected." (SAC at ¶¶ 13, 14); (Doc. No. 20) ("Crane's initial EOI form was deficient because he added additional language at the end . . . ."). Accordingly, to the extent that Chevron relies on plaintiff's submission of the first EOI, the court rejects that argument outright, since the first EOI submission was not accepted by

---

[3] Because the court finds that the new causes of action are within the scope of the leave to amend it granted and are therefore not proposed amendments, the court will interpret Chevron's arguments regarding the futility of the proposed amendments (*see* Doc. No. 20 at 27–33) as contentions that these causes of action fail to state cognizable claims.

Chevron and is therefore of no import. *See* Cal. Civ. Code § 1550 ("It is essential to the existence of a contract that there should be . . . [the parties'] consent.").

Second, to the extent that Chevron's argument is based on plaintiff's submission of the second EOI, the court finds that the SAC plausibly alleges that (1) plaintiff was coerced and/or pressured into submitting the second EOI and (2) he submitted a written letter of revocation, effectively revoking the second EOI. Under California law, "[d]uress, which includes whatever destroys one's free agency and constrains [one] to do what is against [one's] will, may be exercised by threats, importunity or any species of mental coercion." *In re Marriage of Baltins*, 212 Cal. App. 3d 66, 84 (1989) (internal quotation marks and citations omitted). Duress "is shown where a party intentionally uses threats or pressure to induce action or nonaction to the other party's detriment." *Id.* (internal quotation marks and citation omitted). "The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing." *Id.*

Chevron contends that, "[b]y signing and submitting the EOI form, [plaintiff] certified that 'no employee, including but not limited to any supervisor or manager, ha[d] instructed or otherwise influenced [him] to make this decision.'" (Doc. No. 20 at 16; Doc. No. 20-4 at 2.) Chevron points out that the second EOI also states that plaintiff made "th[e] statement freely and voluntarily." (Doc. No. 20-4 at 2.) Accordingly, Chevron argues that plaintiff's claim that he was coerced into submitting the second EOI is belied by its content. (Doc. No. 20 at 20.) Chevron's argument, however, overlooks the factual allegations of the SAC, which the court must accept as true and construe in the light most favorable to plaintiff at this stage of the litigation. *Hishon*, 467 U.S. at 73. The SAC alleges that, after plaintiff's counteroffer to the initial EOI was rejected, his co-workers "demand[ed] that plaintiff take the package[,] so it would leave a vacancy for one of them to fill." (SAC at ¶¶ 15, 16, 17 & 18) (alleging that plaintiff's younger co-workers told him that "[o]lder guys have to retire so [a younger employee] will not get laid off," "older employees 'had their time with the company and they should retire,'" "[y]ou [older] guys better have a good reason for not taking the package," and "[y]ou have your house paid off and your cars paid off. You should take the package and leave."). Plaintiff has also alleged that from November 26 to 27, 2017, he received nine phone calls, emails, and text messages "from

9

supervisors and the individual who would succeed to [his] position," asking him to submit a second EOI, despite the November 22, 2017 deadline to submit an EOI having passed.  (*Id.* at ¶ 19.)  The SAC also alleges that plaintiff "felt harassed and coerced into signing a new EOI form and thought he would be terminated if he did not sign it."  (*Id.* at ¶21.)  Finally, plaintiff alleges that he "felt pressure and stress on the job" due to "younger employees demanding that he submit an EOI so they could have [his] job."  (*Id.* at ¶ 27.)

Chevron argues that these allegations "fall far from establishing . . . fraud, duress, or undue influence" because "no person could reasonably infer from the [] alleged comments . . . that anyone forced the Plaintiff to submit an EOI form."  (Doc. No. 20 at ¶ 21.)  Chevron also argues that, with respect to the alleged November 26 and 27, 2017 communications, the "SAC fails to allege facts indicating who called Plaintiff and when, or the content of the communications."  (*Id.*)  Chevron's arguments are unavailing.  First, it offers no authority in support of its position that the court cannot reasonably infer that the alleged comments coerced plaintiff into submitting a second EOI, but rather points out merely that the comments came from co-workers "who were all less senior than Plaintiff."  (*Id.*)  Second, "[t]o determine whether a contract . . . was the product of duress, [] courts look not so much to the nature of the threats, but to their effect on the state of the threatened person's mind."  *In re Marriage of Baltins*, 212 Cal. App. 3d at 84.  Here, the SAC alleges that plaintiff felt harassed and coerced into signing a new EOI form and thought that he would be terminated if he did not do so.  Moreover, plaintiff's allegations that he received nine phone calls, emails, and text messages, some of which were from supervisors, asking him to file another EOI despite the deadline having passed indicates "importunity or a[] species of mental coercion."  *Id.*

Accordingly, the court concludes that plaintiff's allegations plausibly allege that he was coerced into submitting a second EOI.  However, even if the court were to accept Chevron's contention that plaintiff has failed to adequately allege that he was coerced into submitting the second EOI, the court finds that the SAC plausibly alleges that plaintiff revoked the second EOI by submitting a written letter of revocation within the allotted seven-day period.  (SAC at ¶¶ 20–23.)  The court is not persuaded by Chevron's arguments advanced in support of its motion to

dismiss that plaintiff did not have a right to revoke the second EOI because: (1) he submitted his EOI before learning of the revocation right; (2) the EOI form does not mention revocation; (3) plaintiff does not allege that the Chevron human resources employees were authorized to tell him about the revocation right; and (4) the EOI did not include a waiver of rights, which is necessary for a protected person under the ADEA to be entitled to revoke an agreement. (Doc. No. 20 at 22.)

Plaintiff's allegations that he felt coerced into submitting a second EOI, learned of the opportunity to revoke it from two named human resources employees of Chevron on a specific date, and thereafter revoked the second EOI on a specific date plausibly allege that plaintiff revoked his EOI. Whether plaintiff learned of his right to revoke before or after he submitted the second EOI is of no consequence. Similarly, it does not matter that the EOI did not contain a waiver of rights or claims because plaintiff is not claiming that he had a right to revoke pursuant to the ADEA. Moreover, the fact that the EOI form made no mention of plaintiff's right to revoke is also of no import because plaintiff does not allege that he revoked the second EOI pursuant to the EOI itself. Instead, plaintiff alleges that he revoked the second EOI after learning that he could do so from employees of Chevron's human resources department. "Indeed, even where a contract has been solemnized by a writing, an oral modification of that written contract may be proved by a preponderance of the evidence." *Weiner v. Fleischman*, 54 Cal. 3d 476, 488 (1991). The court finds that in his SAC plaintiff has plausibly alleged that Chevron informed him that he could revoke his EOI within seven days after submission.

Accordingly, the court will deny Chevron's motion to dismiss plaintiff's claims to the extent that the motion is based on the assertion that because he submitted an EOI, plaintiff could not have been terminated, discriminated against, or not rehired based on his age, disability, or in violation of public policy.

**D.      Whether Plaintiff Has Stated Cognizable Claims for Relief**

1.      The FMLA and the CFRA Causes of Action

Chevron first moves to dismiss plaintiff's first and eighth causes of action, which allege violations of the FMLA and the CFRA. (Doc. No. 20 at 18–19.) In support of his FMLA cause

of action plaintiff alleges that his "request for [family medical leave] was a negative favor (sic) in the decision to terminate [his] employment" and that his termination "occurred shortly after [he] sought leave . . . to care for his wife." (SAC at ¶¶ 40, 41.) In his CFRA cause of action plaintiff alleges merely that "Plaintiff's termination violated the [CFRA]." (*Id.* at ¶ 93.) The only other allegations in the SAC that appear to relate to these two causes of action are that "Plaintiff was denied FMLA leave although he was entitled to it" and that he "only received one day without pay to aid his wife." (*Id.* at ¶ 24.) These allegations, however, are conclusory in nature; plaintiff does not allege facts demonstrating that he was entitled to leave under either act, or that his request for leave factored into Chevron's decision to terminate him. *See, e.g.*, *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (To establish a claim for interference under the FMLA, "the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled"); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) (to succeed on her FMLA claim, the plaintiff needed to "prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her").

Here, in his SAC plaintiff has failed to plausibly allege an FMLA or CFRA claim. *See Reif v. Shamrock Foods Co.*, 727 F. App'x 302, 303 n.1 (9th Cir. 2018) ("Federal cases addressing FMLA claims are instructive in interpreting [CFRA] claims because the statutory schemes are similar.").[4] Accordingly, the court will grant Chevron's motion to dismiss plaintiff's first and eighth causes of action, but will do so while granting further leave to amend because at the September 4, 2019 hearing on the pending motion, plaintiff's counsel indicated that plaintiff could allege additional facts to cure these deficiencies.

/////

/////

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1          2.      The ADEA Cause of Action

2          Chevron next moves to dismiss plaintiff's second cause of action in which it is asserted

3   that Chevron violated the ADEA.  (Doc. No. 20 at 19–23.)  The ADEA prohibits an employer

4   from "discharge[ing] any individual or otherwise discriminat[ing] against any individual with

5   respect to his compensation, terms, conditions, or privileged of employment, because of such

6   individual's age."  29 U.S.C. § 623(a)(1).  To state an ADEA claim, a plaintiff must allege that he

7   was "'(1) at least forty years old, (2) performing [his] job satisfactorily, (3) discharged, and

8   (4) either replaced by substantially younger employees with equal or inferior qualifications or

9   discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'"

10  *Wynes v. Kaiser Permanente Hosps.*, 936 F. Supp. 2d 1171, 1179 (E.D. Cal. 2013) (quoting *Diaz*

11  *v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

12         Here, plaintiff alleges in his SAC that he was over forty years old, was performing his job

13  satisfactorily, was terminated, and was replaced by "a substantially younger employee named

14  Meeks."  (SAC at ¶¶ 5, 19, 34.)  These allegations provide a sufficient factual basis upon which to

15  infer that Chevron acted with an intent to discriminate on the basis of age.  *Cf. Ravel v. Hewlett-*

16  *Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1099 (E.D. Cal. 2017) (finding that plaintiff did not

17  allege facts sufficient to infer age discrimination where she did not allege facts indicating

18  defendant's decision to place her on leave was because of her age, such as that she was replaced

19  by a younger employee or that she overheard negative comments about her age).  Accordingly,

20  the court will deny Chevron's motion to dismiss plaintiff's second cause of action.

21         3.      The FEHA Causes of Action

22         Chevron next moves to dismiss plaintiff's third and fifth causes of action in which he

23  alleges that he was wrongfully terminated on the basis of his age and disability in violation of

24  FEHA.  (Doc. No. 20 at 23–24.)  Under FEHA, it is unlawful for an employer "to discriminate

25  against [a] person in compensation or in terms, conditions, or privileges of employment" because

26  of a person's age or mental disability.  Cal. Gov. Code § 12940(a).  To state a FEHA

27  discrimination claim, a plaintiff must allege that:  (i) he was a member of a protected class; (ii) he

28  was qualified for the position he sought or was performing competently in the position he held;

(iii) he suffered an adverse employment action; and (iv) the employer acted with a discriminatory motive.  *See Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000).  Adverse employment actions can include termination, demotion, failure to promote, denial of an available job, adverse job assignments, official discipline, and significant changes in compensation or benefits.  *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009); *Guz*, 24 Cal. 4th at 355; *Thomas v. Dep't of Corrs.*, 77 Cal. App. 4th 507, 511 (2000).  A plaintiff can demonstrate an employer's discriminatory motive through direct evidence, or by offering "circumstantial evidence of discrimination that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Achal v. Gate Gourmet*, 114 F. Supp. 3d 781, 801 (N.D. Cal. July 14, 2015); *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998).

Chevron does not contend that plaintiff has failed to adequately allege the first three elements of a cognizable claim—that is, plaintiff was a member of two protected classes based on his age and disability; he was qualified for the Head Operator position; and he was terminated. Rather, Chevron contends that plaintiff has not alleged facts supporting the last element—that the employer acted with discriminatory motive.  Courts treat this element "with flexibility."  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1211 (9th Cir. 2008).  With respect to age discrimination claims, "California courts interpreting FEHA often look to federal cases interpreting the [ADEA]." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996). As with an ADEA claim, a plaintiff can establish the discriminatory motive factor by showing that he was "replaced by a substantially younger employee with equal or inferior qualifications." *Id.* at 917.  Because the court finds that the SAC plausibly alleges an ADEA claim, it also finds that in the SAC plaintiff has adequately and plausibly alleged a cognizable FEHA age discrimination claim.

With respect to plaintiff's disability discrimination claim, he contends that the proximity between the time when he sought medical leave on the basis of his stress and anxiety disorder on January 18, 2018 and when he was terminated by Chevron on January 30, 2018—a mere twelve

days later—is sufficient to create an inference of causation and discriminatory motive. (Doc. No. 23 at 4.) It has been found that "[w]here appropriate, the [discriminatory motive] requirement may also be met with evidence that the employee was terminated shortly after she revealed her protected status." *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1128–29 (C.D. Cal. 2007); *see also Cleese v. Hewlett-Packard Co.*, 911 F. Supp. 1312, 1320 (D. Or. 1995) ("The fact that [plaintiff] was terminated approximately one month after her pregnancy became known to Hewlett–Packard is sufficient to raise a question concerning Hewlett–Packard's motives in terminating her."). Finding these decisions to be persuasive, the court concludes that plaintiff's third and fifth causes of action—alleging he was terminated on the basis of his age and disability in violation of FEHA—are adequately pled and survive Chevron's motion to dismiss.

Chevron next moves to dismiss plaintiff's ninth cause of action alleging a separate age discrimination violation based on Chevron's decision not to rehire him for a position for which he was qualified. (Doc. No. 20 at 30–31.) Under FEHA, it is also unlawful for an employer to refuse to hire an applicant on the basis of his age. Cal. Gov't Code § 12940(a). In order to allege a FEHA claim for failure to rehire, a plaintiff must allege "(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought . . ., (3) he [or she] suffered an adverse employment action, such as . . . denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Abed v. W. Dental Servs., Inc.*, 23 Cal. App. 5th 726, 736 (2018) (internal quotation marks and citation omitted).

Plaintiff alleges that after he was terminated, he applied for a field operator position for which he was "imminently qualified" but that Chevron did not hire him for the position, instead hiring an individual it claimed was more qualified. (SAC at ¶ 100.) Plaintiff also alleges that he "is informed and believes that substantially younger employees were hired" for the positions that were available. (*Id.* at ¶ 101.) These allegations are similar to those alleged in support of plaintiff's third cause of action, which the court has already found sufficiently alleges that

/////

/////

/////

plaintiff was wrongfully terminated on the basis of his age. Accordingly, these allegations also adequately allege that plaintiff was not rehired on the basis of his age in violation of FEHA.[5]

Chevron next moves to dismiss plaintiff's tenth cause of action in which he alleges that his filing of this action and obtaining right to sue notices "were substantial motivating factors in the Subsequent Job Denial, and therefore violated FEHA." (SAC at ¶ 111.) Plaintiff, however, does not allege in his SAC how his filing of this action or his obtaining of right to sue notices connects with his termination beyond asserting so in conclusory fashion. Nor does plaintiff provide the dates of when he first attempted to exhaust his administrative remedies or any factual allegations indicating that Chevron was aware that he was doing so prior to terminating him. Accordingly, the court will grant defendant's motion to dismiss plaintiff's tenth cause of action asserting a separate FEHA claim, but will do while granting further leave to amend.

Chevron moves to dismiss plaintiff's eleventh cause of action in which he alleges a failure to prevent discrimination. FEHA prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent discrimination . . . from occurring." California Civil Code § 12940(k). Chevron argues that plaintiff cannot allege a cognizable claim for failure to prevent discrimination because he has failed to adequately allege that he was discriminated against. (Doc. No. 20 at 32.) As explained above, however, the court has found that in his SAC plaintiff has plausibly alleged that he was discriminated against on the basis of his age and disability. *See, e.g.*, *Ravel*, 228 F. Supp. 3d 1098 ("Courts have interpreted a failure to prevent discrimination claim [to be] essentially derivative of a [FEHA] discrimination claim.") (internal quotation marks

---

[5] Chevron argues that these allegations are "wholly insufficient because they fail to specify what job position(s) he applied for and when, the qualifications required for the job position(s), and why plaintiff was qualified for the job position." (Doc. No. 20 at 31.) However, in his SAC plaintiff alleges that he applied for a field operator position(s) with Chevron in February 2019, that he was qualified for that position, and that younger employees were hired to fill it instead. (SAC at ¶ 100.) Chevron also contends that plaintiff cannot assert a FEHA claim with respect to its decision not to rehire him because he did not obtain a right to sue letter relating to this alleged violation. (Doc. No. 20 at 31.) However, the SAC alleges that plaintiff has "administratively exhausted [] his federal . . . claims . . . and has obtained right to sue notices applicable to such claims." (SAC at ¶ 38.) Moreover, plaintiff has attached the right to sue notice to his opposition to the pending motion, and that notice specifically relates to his claim that Chevron failed to rehire him on the basis of his age. (*See* Doc. No. 23-1.)

and citation omitted).  Because plaintiff has sufficiently alleged that Chevron discriminated against him in violation of FEHA by terminating him on the basis of his age and disability and failing to re-hire him on the basis of his age, the court also concludes that he has sufficiently alleged that Chevron failed to prevent discrimination on those same bases.  *See id.* at 1098–99.

### 4. The Unlawful Retaliation Causes of Action

Chevron also moves to dismiss plaintiff's sixth and seventh causes of action in which he allege that he was terminated for complaining about being assigned to work alone in dangerous conditions and reporting the dangerous emissions incident, in violation of California Labor Code §§ 232.5, 1102.5, and 6310.  (Doc. No. 20 at 24.)

#### a. *California Labor Code § 232.5*

Section 232.5(d) of the California Labor Code prohibits an employer from "discharg[ing], . . . or otherwise discriminat[ing] against an employee who discloses information about the employer's working conditions."  As one court has noted, "the Legislature did not define the phrase 'working conditions' in section 232.5, and . . . there is scant case law on the issue."  *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, No. 16-cv-00737-JM (JMA), 2017 WL 3174542, at *7 (S.D. Cal. July 26, 2017) (internal quotation marks omitted).

With respect to plaintiff's allegation that he was terminated for complaining about working alone in dangerous conditions, the court concludes that plaintiff has not plausibly alleged that he was terminated or discriminated against as a result of that alleged disclosure.  Indeed, the SAC does not point out when this disclosure was even made by plaintiff or how it allegedly related to his termination.  However, with respect to plaintiff's reporting of the dangerous emissions incident, the court finds that this disclosure can form the basis of plaintiff's § 232.5 claim, because in his SAC plaintiff alleges that:  the incident occurred on January 9, 2018; he was excluded from the meeting about the incident the following day; he reported about the incident on January 24, 2018 by submitting a report to his supervisors and contacting Chevron's hotline; Chevron's supervisors did not want the incident to be reported and were attempting to cover it up; and he was terminated a mere six days after he reported the incident.  (SAC at 5–6.)  Accordingly, plaintiff's cause of action alleging a violation of § 232.5 based on his reporting of the dangerous

17

emissions incident will not be dismissed.  Moreover, plaintiff will be granted further leave to amend, should he be able to allege additional facts which, if proven, would demonstrate that his disclosure about working conditions also constituted a violation of § 232.5.

### b. California Labor Code § 1102.5

Section 1102.5(b) of the California Labor Code prohibits an employer from "retaliat[ing] against an employee for disclosing information . . . to a person with authority over the employee or another employee who has authority to investigate, discover, or correct the violation or noncompliance."  To state a claim under § 1102.5, a plaintiff must allege that:  "(1) that the employee engaged in protected activity; (2) that he was thereafter subjected to an adverse employment action by his employer; and (3) that there was a causal link between the employee's protected activity and the adverse employment action."  *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 1:17-cv-01056-DAD-BAM, 2019 WL 3946895, at *5 (E.D. Cal. Aug. 21, 2019).  A disclosure is protected if the employee has "reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."  Cal. Lab. Code § 1102.5(b).  "It has been held that a plaintiff fails to show reasonable cause for his suspicion of a violation of law when he 'does not cite any statute, rule, or regulation that may have been violated by the disclosed conduct' and 'argues simply that he reasonably believed that the activity violated some unnamed statute, rule, or regulation.'"  *Roadrunner*, 2019 WL 3946895, at *7 (quoting *Love v. Motion Indus., Inc.*, 309 F. Supp. 3d 1128, 1135 (N.D. Cal. 2004)).  Here, plaintiff's SAC does not identify any statute, rule, or regulation that may have been violated by his complaints about his working condition or his reporting of the emissions incident.  Accordingly, the court will grant defendant's motion to dismiss plaintiff's § 1102.5 claim with leave to amend.

### c. California Labor Code § 6310

Finally, California Labor Code § 6310(a) prohibits an employer from discharging or discriminating against an employee for making a complaint to his employer or for instituting any proceeding under or relating to the employee's rights.  Because plaintiff has not plausibly alleged

that his complaint regarding his working conditions contributed to his termination, his § 6310 claim based upon such a complaint will also be dismissed with leave to amend. However, plaintiff has plausibly alleged in his SAC a link between his reporting of the dangerous emissions incident and his termination. Accordingly, the court concludes that plaintiff's § 6310 claim based on the reporting of the dangerous emissions incident survives defendant's motion to dismiss.

Based on the foregoing, plaintiff's sixth cause of action will be dismissed in its entirety with leave to amend, and his seventh cause of action will be dismissed with leave to amend only to the extent it asserts a claim under Labor Code § 1102.5.

### 5. The Wrongful Termination in Violation of Public Policy Cause of Action

Chevron next moves to dismiss plaintiff's twelfth cause of action for wrongful termination in violation of public policy. As a matter of California common law, "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Nosal-Tabor v. Sharp Chula Vista Med. Ctr.*, 239 Cal. App. 4th 1224, 1234–35 (2015) (quoting *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014)). The public policy implicated must be: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund*, 347 F.3d at 758 (quoting *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159 (1998)).

Chevron contends that plaintiff has not alleged any specific public policy that was violated. (Doc. No. 20 at 27.) In his SAC, however, plaintiff alleges that several California statutory provisions were violated by Chevron's decision to terminate him, including the California Labor Code, the CFRA, and the FEHA. (*See* SAC at ¶ 128.) Having found that

plaintiff has adequately pled his FEHA and some of his Labor Code violation claims, the court also concludes that he may maintain his derivative claims for wrongful termination. *See Hernandez v. MidPen Housing Corp.*, No. 13-cv-05983 NC, 2014 WL 2040144, at *6 (N.D. Cal. May 16, 2014) ("Because the Court denies the motion to dismiss [plaintiff's FEHA retaliation claims], the claim for wrongful termination in violation of public policy also survives."); *cf. Sneddon v. ABF Freight Syss.*, 489 F. Supp. 1124, 1131 (S.D. Cal. 2007) (dismissing plaintiff's derivative cause of action for wrongful termination in violation of public policy after concluding that plaintiff had failed to state a claim as to the underlying FEHA discrimination claim).

Accordingly, defendant's motion to dismiss plaintiff's twelfth cause of action alleging wrongful termination in violation of public policy will be denied.

6.      The Breach of Contract

Finally, Chevron moves to dismiss plaintiff's fourth cause of action, a breach of contract claim. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016).

Plaintiff alleges that a document he has attached to his SAC as "Exhibit 1 is a contractual agreement between Plaintiff's Union and Defendant." (SAC at ¶ 63 & Ex. 1.) Plaintiff alleges that he is a third-party beneficiary of this agreement (*id.* at ¶ 64), and that Chevron violated that agreement by not granting him his rights under paragraph 9 of that agreement, which states that "[t]he Company shall have the rights to reassign displaced employees to fill vacancies created by the workforce reduction described in this Agreement." (Doc. No. 18-1 at 3.) Paragraph 9(a) of the agreement provides that a "Head Operator . . . whose position has been eliminated as part of this workforce reduction may exercise his seniority to displace a junior Head Operator . . . within his field, provided that he has the qualifications." (*Id.*) Paragraph 9(a)(1) provides that "[i]f the Head Operator . . . is unable to exercise his seniority . . ., he may be reassigned to fill a Head Operator . . . job opening in another field." (*Id.*) Finally, Paragraph 9(b) states that "[i]f the Head
/////

Operator . . . cannot fill a job opening using the procedures described . . . above, he will be placed into an Operator pool . . . for reassignment based on business needs." (*Id.* at 4.)

Despite the provisions upon which he relies, the court concludes that in his SAC plaintiff has failed to plausibly allege a breach of contract claim. First, plaintiff cannot have it both ways; either he revoked his EOI and was therefore not part of the workforce reduction, or he did not revoke his EOI. Plaintiff argues that he did not agree to his early termination. If that is the case, he cannot also contend that he is a beneficiary of an agreement designed for those who did so. Second, even if the agreement upon which he relies in making this claim were to apply to plaintiff, the agreement explicitly states "EOI employees will *not* be eligible for recall or rehire." (*Id.*) (emphasis added). In addition, it appears plaintiff has misinterpreted the agreement; Paragraph 9 applies to employees who have been displaced as a result of the workforce reduction, not employees who submitted an EOI. Plaintiff does not allege in his SAC that he was displaced as result of the workforce reduction.

Because the agreement on its face does not apply to plaintiff given the allegations of the SAC, the court will dismiss his fourth cause of action alleging breach of contract without leave to amend. *Zamora v. Solar*, No. 2:16-cv-01260-ODW-KS, 2016 WL 3512439, at *2 (C.D. Cal. June 27, 2016) ("A denial of leave to amend is proper on a breach of contract claim where an amendment would be futile because the terms of the contract, which are not subject to change, preclude plaintiff's claim.").

**E.      Whether Plaintiff's Requests for Punitive Damages Should be Stricken**

Finally, Chevron moves to strike plaintiff's requests for punitive damages arguing that plaintiff's allegations of malice against it fail to state a claim upon which relief can be granted. (Doc. No. 20 at 33.) The court finds this argument to be persuasive.

"When a plaintiff alleges a claim for punitive damages, a court may dismiss the claim if the plaintiff fails to allege sufficient facts to show oppression, fraud, or malice." *Guarantee Real Estate v. Hanover Ins. Co.*, No. 1:14-cv-00860-TLN, 2014 WL 5817536, at *5 (E.D. Cal. Nov. 7, 2014) (internal quotation marks and citation omitted). "Moreover, facts are insufficient when the

/////

21

plaintiff asserts nothing more than conclusory allegations of oppression, fraud, or malice." *Id.* (internal quotation marks and citation omitted).

Here, the SAC repeatedly states (nine times, all in conclusory fashion) that "Plaintiff requests the assessment of punitive damages against Defendant in an amount to punish and make an example of defendant[]. Plaintiff is informed and believes that upper management of Defendant made the decisions concerning the facts set forth herein." (SAC at ¶¶ 61, 77, 84, 91, 98, 109, 118, 126, 133.) These allegations do not plausibly allege a claim for punitive damages because they are entirely conclusory. "Something more is necessary to plausibly support an evil motive behind [defendant's] actions." *Coppola v. Smith*, 982 F. Supp. 2d 1133, 1145 (E.D. Cal. 2013). In fact here, plaintiff's SAC fails to allege any acts of malice, oppression, or fraud on the part of defendant. Accordingly, Chevron's motion to strike plaintiff's claims for punitive damages will be granted with leave to amend.

## CONCLUSION

For the reasons set forth above,

1.       Defendant's motion to dismiss (Doc. No. 20) is granted in part and denied in part as follows:

     a.       Plaintiff's first, sixth, eighth, and tenth causes of action are dismissed with leave to amend;

     b.       Plaintiff's seventh cause of action is dismissed only with respect to his California Labor Code § 1102.5 claim and he is granted leave to amend that claim;

     c.       Plaintiff's fourth cause of action is dismissed without leave to amend;

     d.       Plaintiffs requests for punitive damages are stricken with leave to amend;

     e.       Defendant's motion to dismiss is denied in all other respects; and

/////
/////
/////
/////

2.    Any amended complaint shall be filed with fourteen (14) days from the issuance of this order.

IT IS SO ORDERED.

Dated:    **March 4, 2020**

UNITED STATES DISTRICT JUDGE